KNOTT, JAMES R., Associate Judge.
This case arose out of a condemnation proceeding instituted by appellant, hereinafter referred to as petitioner, seeking to condemn an easement for a right-of-way 100 feet in width through certain land owned by the appellees, hereinafter referred to as defendants, near Bushnell, Florida, for the purpose of constructing electric power transmission lines thereon. Included in the petition seeking condemnation was the following paragraph:
“3. Outside the boundaries of the property last above described but closely adjacent to the north boundary thereof presently stand twenty trees, the exact type, size and location of which are reflected by map annexed hereto as Exhibit B. Because of their proximity these trees if felled would collide with or approach so nearly the wires, towers and associated facilities of the transmission line to be constructed as to endanger human life and delay the commencement of the use of such line as a part of Petitioner’s service to its consumers. For this reason it is essential as an incident of the public use described in paragraph one hereof that these trees, commonly referred to as ‘danger trees’, be removed in advance of commencement of construction so as to eliminate all peril therefrom in building the line and to insure thereafter safe, prudent and uninterrupted operation and maintenance.”
The petition prayed for leave to enter and remove the trees outside of and adjacent to the requested 100-foot right-of-way. The location and size of the trees were shown on a map or diagram attached to the petition; however, the land area in which the petitioner sought to exercise the right of cutting and removing trees was not otherwise specifically described.
The trial court granted a motion filed by defendants to strike the paragraph quoted above, grounded on the contention that the petitioner power company would have to condemn the land occupied by the danger trees in order to be entitled to remove the trees. The petitioner thereupon sought a writ of certiorari in the Supreme Court to review the order of the trial court granting the motion to strike. Certiorari was denied without prejudice to raise the question on a subsequent appeal, Fla., 101 So.2d 145. Thereafter the cause proceeded to trial on the issue of compensation to the owner for the 100-foot easement, and the jury returned a verdict of $2,800 for the same, together with $800 attorneys’ fees for the defendants.
The first question presented for our consideration relates to whether, as an incident to the appropriation of a right-of-way for a transmission line, a public utility corporation, upon payment of just compensation, may also condemn the privilege of severing and removing trees located adjacent to the right-of-way and in such close proximity thereto as to constitute a menace to the safe and efficient construction and maintenance of the transmission line, without also condemning the *749 land upon which the trees stand. The point presented for decision appears to be one of first impression in Florida, although there are a number of decisions in other jurisdictions interpreting eminent domain statutes analogous to our own.
It may be observed at the outset that officers and directors of a public service corporation endowed with the power of eminent domain have a wide discretion in the determination of what property, and how much, it is necessary to condemn for public use. Robertson v. Brooksville & I. Ry. Co., 100 Fla. 195, 129 So. 582. In the exercise of the power, they are at liberty to select a program that will combine the greatest benefit to the public with the least inconvenience and expense to the condemning authority. Central Hanover Bank & Trust Co. v. Pan American Airways, 137 Fla. 808, 188 So. 820, 824. They cannot be compelled to take more than is needed, City of Jacksonville v. Shaffer, 107 Fla. 367, 144 So. 888, but should never appropriate in excess of what is reasonably necessary to answer the public purpose in view. Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488; 18 Am.Jur. 736, 737; 68 A.L.R. 837, annotation. Counsel for petitioner argues, and we think aptly, that the latter proposition is particularly applicable where, as here, the cost of the property enters into the utility’s rate base, Section 366.06(2), Florida Statutes, F.S.A., with the attendant obligation upon the company to make only honest and prudent investments to the end that rates charged to the consumers are fair and reasonable. See Section 366.05(1), Florida Statutes, F.S.A.
In the present case the petitioner, once the danger trees are removed, has no use for the land upon which they stand. It could not justify any retention of an easement, possession or other indicia of ownership by claim of public need or necessity. It does not desire, nor has it any right, to deprive the owner of the beneficial use of the land, except only as such use may interfere with the petitioner’s right and duty safely and efficiently to utilize the right-of-way, a right attaching to every owner of an easement.
Three chapters of the Florida Statutes control the power of eminent domain, being Chapters 73, 74 and 361, F.S.A. In addition to the power to condemn land provided in F.S. Chapters 73 and 74, F.S.A., a public works corporation is granted authority to enter upon adjacent lands and take therefrom material necessary for the construction and repair of its works and improvements, upon making due compensation according to law, under the following provisions of F.S. § 361.01, F.S.A.:
“The president and directors of any corporation organized for the purpose of constructing, maintaining or operating public works, or their properly authorized agents, may enter upon any land, public or private, necessary to the business contemplated in the charter, and may appropriate the same, or may take from any land most convenient to their work, any timber, stone, earth or other material which may be necessary for the construction and the keeping in repair of its works and improvements upon making due compensation according to law to private owners.”
In the case of Yadkin River Power Co. v. Wissler, 160 N.C. 269, 76 S.E. 267, 269, 43 L.R.A.,N.S., 483, a North Carolina electric utility sought to condemn the privilege of cutting down certain trees adjacent to a transmission line, by petition containing allegations similar to those of Paragraph 3 of the petition in the present case. The trial court sustained a demurrer to the petition and the petitioner appealed. In holding that the public utility had the right to condemn the privilege of cutting down trees adjacent to the transmission line easement, the Supreme Court of North Carolina said:
“Ordinarily and in its proper acceptation the term ‘right of way’ is un *750 derstood to be an easement in the lands of another attaching to some specific portion of the land, defined and ascertainable by specific surface boundaries * * * but our statute applicable to these companies in question is much broader in its scope and terms, and must be given a more extended meaning * * * Again in section 2576 it is enacted: ‘For the purpose of con--structing its works and necessary appurtenances thereto or of repairing them after they shall have been made, or of enlarging or otherwise altering them, the company may, at any time, enter on any adjacent lands, and cut, dig, and take therefrom any wood, stone, gravel or earth which may be deemed necessary: Provided, that they shall not, without the consent of the owner, destroy or injure any ornamental or fruit trees.’
“From these and other portions of the act it appears that the power of condemnation granted to these companies is not confined to a right of way delimited by surface boundaries, but may be extended to cutting of trees or removing obstructions outside of these boundaries when required for the reasonable preservation and protection of ■their lines and other property. The terms, rights, and privileges used in our statute are broad enough to include the right sought in the present petition (6 Words and Phrases, p. 5583),* and in view of the positions stated, sustained as they are in reason and authority, we are of opinion that the petitioner, on the facts as they now appear, should be allowed to condemn the right to cut these trees, paying for this right and privilege as in other cases the value of the trees cut and the damage done to the land by reason of cutting the same. Virginia & C. S. Railroad Co. v. McLean, 158 N.C. 498, 74 S.E. 461.”
A comparison of the quoted portions of the North Carolina statute with the provisions of Sec. 361.01, supra, shows them to be substantially similar. We agree with the conclusion of the North Carolina court and with the principle underlying the decisions to like effect in other states having somewhat similar statutes. See Monongahela Power Co. v. Shackleford, 137 W.Va. 441, 73 S.E.2d 809; West Virginia & Maryland Power Co. v. Raccoon Valley Coal Co., 93 W.Va. 505, 117 S.E. 891; Webster v. Susquehanna Pole Line Co., 112 Md. 416, 76 A. 254; Texas Electric Service Co. v. Perkins, Tex.Com.App., 23 S.W.2d 320.
Holding as we do that the grant of authority under our Florida statutes is sufficient to allow the petitioner, upon payment of just compensation, to condemn the twenty danger trees on the land adjacent to the actual right-of-way taken, as identified on the map attached to the petition filed in the trial court, the judgment appealed from must be reversed on that issue.
We note in passing that while the relief sought in the petition as to danger trees is confined to those 20 trees specifically designated and identified on the map attached thereto, the petitioner’s brief plainly implies that the license sought is meant to extend to trees which might grow to a dangerous height in the same general area in the future. We observe that if the petitioner expects to exercise a similar license as to other trees in the future, based upon a judgment in the present case, the petition should be amended to show specifically the land area within which the license is to be exercised.
The petitioner raises a second question on this appeal which we feel warrants a reversal of the judgment and a new trial on the issue raised in the petition condemning the 100-foot easement.
At the trial of the cause the petitioner offered two expert witnesses, Tread- *751 way and Hargraves, to testify to the value of the easement taken, which, of course, was the heart of the issue tried in the lower court. After reviewing the qualifications of each witness as an expert, petitioner asked his opinion as to the fair market value of the property before and after being burdened with the easement, to which defendants objected on the ground that a proper predicate had not been laid to qualify such witnesses as experts. The court sustained the objection. While recognizing that the determination of the competency of witnesses is a matter within the sound discretion of the trial court, we feel the learned trial judge abused his discretion and committed prejudicial error in not allowing the testimony of the petitioner’s two expert witnesses since in our opinion both qualified as experts, and the effect of the trial court’s ruling was to strip petitioner of any expert testimony on the market •value of the property interest taken. The jury had before it no evidence on the question of the market value of the property taken except the opinion of the owner.
As mentioned above, after the trial court granted defendants’ motion to strike Paragraph 3 of the petition, the petitioner filed application for certiorari which was orally argued by counsel for the respective parties and resulted in a denial of the writ without prejudice to present the legal issue involved in the event of an appeal. During the subsequent trial of the cause the defendants offered evidence as to attorney’s fees and included therein, over petitioner’s objections, the defense of petitioner’s application for writ of certiorari. Petitioner contends that since the certiorari matter involved an issue which was not tried by the jury, the defendants are not entitled to attorney’s fees for successfully defending against that issue.
F.S. § 74.10, F.S.A., relating to eminent domain, provides that “all costs of proceedings shall be paid by the petitioner, including a reasonable attorney’s fee for the defendant to be assessed by the jury, except the cost upon the writ of error taken by a defendant, on which the judgment of the circuit court shall be affirmed.” The clear intention of both the Constitution and the aforementioned statute is to render full compensation to an owner. To sustain the petitioner’s contention would defeat this purpose. We therefore hold that the defendants are entitled to recover reasonable counsel fees to be fixed by the jury for the defense' of the petitioner’s application for certiorari, as well as for the defense of the case in the trial court.
The judgment is reversed for a new trial on the petition in its entirety.
ALLEN, C. J., and KANNER, J., concur.

 See 37A Words and Phrases, Right Privilege, or Immunity, page 435.